UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL McGEE, et al.,

    Plaintiffs,

v.                           **CASE NO: 8:11-cv-1091-T-27TGW**

S-BAY DEVELOPMENT, LLC, et al.,

    Defendants.

_____/

## ORDER

**BEFORE THE COURT** are motions to dismiss filed by the Sunvest Defendants[1] (Dkt. 67) and David Schwarz (Dkt. 69). Plaintiffs have responded in opposition (Dkts. 80, 85). Upon consideration, the motions are GRANTED.

### Background

Plaintiffs purchased units in a condominium conversion project known as the Sarasota Cay Club. They commenced this action, alleging that they were victims of a massive fraudulent scheme perpetrated by virtually every person or entity involved in the project and real estate transactions. (No. 8:09-cv-2543, Dkt. 1). In their complaint, Plaintiffs contended that approximately 70 Defendants were liable for securities fraud, violation of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701, *et seq.*, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq.*, fraudulent misrepresentation, fraudulent concealment, conspiracy to commit fraud, professional negligence, constructive trust, breach of contract and negligent misrepresentation.

---

[1] The "Sunvest Defendants" include S-Bay Development, LLC, Sunvest Resorts Communities LLC, Harris Friedman, Herbert Hirsch, Harvey Birdman, Harvey Birdman Revocable Trust, Diane S. Birdman, Diane S. Birdman Revocable Trust, Louis Birdman, Louis Birdman Revocable Trust, Bonita Hirsch, and Bonita Hirsch Revocable Trust.

The original complaint was dismissed for a variety of reasons, including failure to plead fraud with particularity. (No. 8:09-cv-2543, Dkt. 159). Plaintiffs' claims were then severed into seven actions, corresponding with seven categories of Defendants identified in the original complaint. (*Id.*).

This is Plaintiffs' action against the "purchasing and owner defendants," which include the entity that owned the property, the developer entity, the individuals and entities who were members of the owner and developer, and several parties whose involvement has not been explained. (No. 8:11-cv-1091, Dkt. 1). Defendants moved to dismiss, and Plaintiffs filed an amended complaint to correct deficiencies identified in the motions. (Dkt. 55).[2]

The amended complaint contains six counts: (1) violation of RICO, (2) violation of the securities laws, (3) violation of ILSFDA, (4) fraud (intentional misrepresentation), (5) fraud (concealment), and (6) constructive trust. The Sunvest Defendants and Schwarz moved to dismiss, arguing that Plaintiffs did not plead fraud with particularity and failed to state a cause of action.

## Discussion

To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2] Unless otherwise stated, all docket references are to this action, 8:11-cv-1091.

2

**The fraud claims**

Plaintiffs' fraud claims are based on six misrepresentations: (1) Sarasota Cay Club was a condominium, (2) the value of the units would increase, (3) a mandatory leaseback was optional, (4) the closing funds would be used to develop the property or pay off certain liens,[3] (5) a second phase would be constructed and various improvements would be made to the common grounds, and (6) upgrades would be made to each unit. Plaintiffs further suggest that the manner in which the units were conveyed was fraudulent. Many of these representations do not constitute actionable fraud.

First, Plaintiffs allege that the representation that Sarasota Cay Club was a condominium was false because the development failed to comply with certain statutory requirements. This argument was rejected in Plaintiffs' action against the title insurance company. (No. 11-cv-1100, Dkt. 39). As the order explained, "[a] condominium is created by recording a declaration in the public records of the county where the land is located, executed and acknowledged with the requirements for a deed." (*Id.* at 2 (quoting Fla. Stat. § 718.104(2)). "It is the recording of the declaration in the public records that subjects the property to condominium ownership." *Winkelman v. Toll*, 661 So. 2d 102, 105 (Fla. 4th DCA 1995). Florida's condominium statute provides:

> If an action to determine whether the declaration or another condominium document complies with the mandatory requirements for the formation of a condominium is not brought within 3 years of the recording of the declaration, the declaration and other documents shall be effective under this chapter to create a condominium, as of the date the declaration was recorded, whether or not the documents substantially comply with the mandatory requirements of law.

Fla. Stat. § 718.110(10). Because no action was filed within the three year period, the declaration was effective to create a condominium as of the date of its recording, regardless of whether the documents complied with the statutory and regulatory requirements. (No. 11-cv-1100, Dkt. 39).

---

[3] Plaintiffs also allege a failure to disclose that 80% of the closing funds would be paid Defendants.

Further, Plaintiffs' arguments that Sarasota Cay Club was not a condominium are unpersuasive. It is immaterial that the developer held the property under a twenty-four month lease, because the owner joined and consented to the Declaration. (No. 11-cv-1100, Dkt. 28-3 at 61). Therefore, the "interest in the land" submitted to condominium ownership was both the leasehold and the fee simple interest. Fla. Stat. § 718.104(2).

Plaintiffs' argument that the common elements were nonexistent likewise fails to support a claim that the development was not a condominium. The Declaration only omitted of the items that the statute requires to be designated as a common element: "[t]he property and installations required for the furnishing of utilities and other services to more than one unit or to the common elements." Fla. Stat. § 718.108(1)(d). But the entire condominium would not fail because of this omission. Plaintiffs could seek relief by filing an action for correction of the Declaration or by amending the Declaration as provided under the statute. *See* Fla. Stat. § 718.110(10); *Winkelman*, 661 So. 2d at 105 ("[T]he provisions of the declaration must conform to the statutory requirements, and to the extent that they conflict therewith, the statute must prevail."). Simply put, the representation that Sarasota Cay Club was a condominium was not false.

Second, Plaintiffs allege that certain marketing materials misrepresented the current and potential value of the units. For example, the materials represented that there was "built in equity," that the units were "hedged from [the] bubble," that investors had an "exit strategy," and that the units would "increase in value." (Dkt. 56-1, Am. Compl. Ex. 24). But as the Sunvest Defendants argue, these statements are "puffery," not actionable fraud. *See Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342-43 (S.D. Fla. 2011). To the extent Plaintiffs argue that the representation of fee simple ownership was false, their position is belied by the warranty deeds.

Third, Plaintiffs allege that the manner in which title was conveyed was fraudulent. S-Bay Development, LLC, the owner of the Sarasota Cay Club property, leased the property to the developer, DC 705 JV LLC. DC 705 then entered into purchase agreements with Plaintiffs. Prior to closing, S-Bay conveyed each unit to DC 705 so that the units could be conveyed to Plaintiffs. These facts, taken in the light most favorable to Plaintiffs, do not support a plausible fraud claim.

Notwithstanding the foregoing, Plaintiffs have identified several representations which could conceivably give rise to a plausible claim. Plaintiffs allege that (1) Defendants provided marketing materials which contained a "false appraisal" that misrepresented the appraised value, (2) Defendants misrepresented how closing funds would be used, (3) Defendants misrepresented that a mandatory leaseback was optional, and (4) Defendants represented that certain upgrades and improvements would be made which were never intended. These representations could arguably support claims sounding in fraud. The question is whether Plaintiffs have stated such claims with particularity.

**Federal Rule of Civil Procedure 9(b)**

All claims sounding in fraud must "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b); *see Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (securities fraud); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (RICO, where predicate acts are mail or wire fraud); *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 642 F. Supp. 2d 1344, 1351-52 (S.D. Fla. 2009) (ILSFDA). Therefore, Plaintiffs must identify:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro*, 544 F.3d at 1237 (quotation omitted).

Plaintiffs attached a document containing the alleged false appraisal (Dkt. 56-1, Am Compl. Ex. 24). But they failed to identify when and where they received the document, who was responsible for preparing or authorizing it, how the appraisal was false, and how they were misled.

With respect to representations regarding the use of the closing funds, Plaintiffs have not offered any specific facts to support their contentions. Plaintiffs have not identified precisely what the representations were, what documents contained them, when they were made, or who was responsible for making them. To the extent Plaintiffs' claim is that no one informed them that the closing funds would be paid to the Sunvest Defendants and Schwarz, Plaintiffs have not alleged who was responsible for making such a disclosure or when it should have been made. Nor have they alleged specific facts demonstrating that the Sunvest Defendants or Schwarz had a duty to make this disclosure. *See Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003).

As for representations regarding the leaseback and representations that certain upgrades and improvements would be made, Plaintiffs attached promotional materials containing these representations (Dkt. 56-1, Am Compl. Exs. 25-27). But none of these exhibits, on their face, purport to identify any particular Defendant. And Plaintiffs have not alleged precisely who was responsible for making or authorizing these statements. Plaintiffs simply allege that Exhibit 25 "is a further advertisement provided with approval and direction by defendants, during 2005, 2006, and 2007 to the plaintiff purchasers by the Defendants." (Dkt. 55, Am. Compl. ¶ 88) (emphasis added). They allege that Exhibit 26 was "distributed in 2005, 2006 and 2007 by the defendants to the plaintiffs" and that "the defendants caused [Exhibit 27] to be distributed and presented to the plaintiffs." (*Id.* ¶¶ 90, 92) (emphasis added). By lumping all Defendants together, Plaintiffs have not "inform[ed] each defendant of the nature of his alleged participation in the fraud" and therefore failed to satisfy

Rule 9(b). *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (quotation omitted).

Because Plaintiffs have not pled any of the representations that arguably support a fraud claim with the particularity required by Rule 9(b), their claims for securities fraud, violation of RICO, violation of ILSFDA, fraud, and fraudulent concealment must be dismissed.

**The Securities Act of 1933 and the Securities Exchange Act of 1934**

Plaintiffs allege that Defendants: (1) sold unregistered securities in violation of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e; (2) violated the anti-fraud provisions of § 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5; (3) violated § 15 of the Securities Act of 1934, 15 U.S.C. § 78 o, by selling securities without a license, and (4) violated the anti-fraud provisions of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).[4]

As discussed, Plaintiffs' claim for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5 is subject to dismissal for failure to plead fraud with particularity. In addition, the Sunvest Defendants argue that they cannot be liable for any violation of the securities laws because the transactions did not constitute the sale or issuance of securities. Under the Securities Act and the Exchange Act, "security" is defined to include an "investment contract." *SEC v. Edwards*, 540 U.S. 389, 393 (2004). An investment contract arises where there is "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (quotation omitted); *see SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

---

[4] Although not argued by the parties, courts have held that "§ 15 of the 1934 Act, 15 U.S.C. § 78 o . . . does not give rise to a private right of action." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) (en banc). Further, the Eleventh Circuit has held that "section 17(a) [of the Securities Act of 1933] does not imply a private cause of action . . . ." *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 784-85 (11th Cir. 1988).

Whether the transaction constituted an investment contract is a fact-based inquiry. This requires an assessment of several factors, including whether the units were marketed and sold for personal use or as an investment, whether the purchase of the units was conditioned on entering into the leaseback agreements, whether Plaintiffs were dependent on the skills of a promoter or other third party, the amount of control that Plaintiffs retained under the agreements, and whether that control was illusory. Further, the entire transaction, including the representations made by Defendants, must be considered. *See Alunni v. Dev. Res. Group, LLC*, 445 F. App'x 288 (11th Cir. 2011); *Bamert v. Pulte Home Corp.*, 445 F. App'x 256 (11th Cir. 2011); *Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Gordon v. Terry*, 684 F.2d 736 (11th Cir. 1982); *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187 (5th Cir. 1979). Under the circumstances, this issue is more appropriately addressed on a fully developed record than the bare pleadings.[5]

Next, the Sunvest Defendants argue that Plaintiffs are making conspiracy or aiding and abetting claims which are not permitted under § 10(b) and Rule 10b-5. As the Supreme Court has held, liability in private actions under § 10(b) and Rule 10b-5 is limited to the person or entity who "makes" the fraudulent statement, that is, "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). In addition, under § 20(a), "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws may be jointly and severally liable. 15 U.S.C. § 78t(a). Because the amended complaint fails to identify precisely who it was that made each fraudulent statement, it is impossible to determine whether Plaintiffs are making an impermissible aiding and abetting claim or a permissible claim that each

---

[5] Defendants' arguments that there was no common enterprise with Sunvest and that Sunvest was not a party to the leaseback agreement are rejected. Plaintiffs alleged sufficient facts to state a plausible claim that there was an investment contract as to DC 705, CC 705, and Sunvest "as an affiliate of those defendants." *Bamert*, 445 F. App'x at 267.

Defendant either "made" the alleged fraudulent statements or controlled those who did.

The Sunvest Defendants contend that any control person theory falls short because Plaintiffs have not pled facts showing that they had the ability to control DC 705, which sold the alleged securities. Contrary to the Sunvest Defendants' argument, liability under § 10(b) and Rule 10b-5 is not limited to parties who sell securities. As the Supreme Court has explained, "[a]ny person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1991). To the extent Plaintiffs allege that the Sunvest Defendants 'made' misrepresentations in violation of the securities laws (or controlled those who did), it does not matter whether they were the ones that actually sold the units to Plaintiffs.[6]

Defendants argue that the securities fraud claim is also defective because Plaintiffs failed to comply with the Private Securities Litigation Reform Act, which requires them to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Because Plaintiffs have not identified which statements were made by which Defendants, it is impossible to determine whether they have alleged sufficient facts to give rise to a strong inference that those statements were made with the required state of mind.

**Racketeer Influenced and Corrupt Organizations Act**

As discussed, Plaintiffs' RICO claim is subject to dismissal for failure to comply with Rule 9(b). Defendants argue that Plaintiffs failed to state a RICO claim on several additional grounds.

---

[6] The Sunvest Defendants also argue that they cannot be liable for the sale or issuance of unregistered securities because they did not sell any units to Plaintiffs. Plaintiffs did not respond to this argument and therefore are deemed not to oppose dismissal of their claim under 15 U.S.C. § 77e, as it pertains to the Sunvest Defendants.

RICO's private right of action provides, in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court. . . .

18 U.S.C. § 1964(c). Plaintiffs rely on § 1962(c), which requires proof that a defendant participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" includes predicate acts such as mail fraud and wire fraud. 18 U.S.C. § 1961(1). "In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n*, 605 F.3d at 1290-91. The Sunvest Defendants argue that Plaintiffs have not alleged two related predicate acts or continued criminal activity.

The predicate act of mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.' " *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,' even if the mailing itself 'contain[s] no false information.' " *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 712, 715 (1989) (internal citation omitted)).

Plaintiffs allege that Defendants engaged in a scheme to defraud them into purchasing Sarasota Cay Club units by using marketing materials that contained several false representations. In furtherance of this scheme, the Sunvest Defendants and Schwarz directed those under their control to send advertising materials, membership sales documents, purchase contracts, and the leaseback agreements by mail to Plaintiffs. "Each of these mailings was an 'act which is indictable' as mail fraud, and together they constituted a 'pattern of racketeering activity.' " *Bridge*, 553 U.S. at 648.

The Sunvest Defendants protest that Plaintiffs have not alleged facts showing that a reasonable person would have relied on the representations in the marketing materials.[7] But the Supreme Court has made clear that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." *Bridge*, 553 U.S. at 649. It therefore follows that Plaintiffs need not demonstrate that their reliance was justifiable or, stated differently, that a reasonable person would have relied on the statements. *See id.* at 648-49 ("The common-law requiremen[t] of 'justifiable reliance' . . . plainly ha[s] no place in the [mail, wire, or bank] fraud statutes." (quoting *Neder v. United States*, 527 U.S. 1, 24-25 (1999)).

With respect to the continued criminal activity prong, " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* The length of time is measured by the date of each mailing. *See Jackson v. BellSouth Telecommc'ns*, 372 F.3d 1250, 1266 n. 19 (11th Cir. 2004). Plaintiffs have alleged that materials were mailed "during 2005, 2006, and 2007," which could be a period as short as one year and two days, or as long as three years.[8] The former fails to establish a sufficient a closed period of continuity. *Id.* at 1266-67 (collecting cases). On the other hand, the latter is arguably a "substantial time period."

Open-ended cases, which rely on the threat of continuity, require a showing either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the

---

[7] The Sunvest Defendants rely on *Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002), which was abrogated by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 647 (2008).

[8] This lack of specificity is further reason for dismissal under Rule 9(b).

future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J.*, 492 U.S. at 242. There appears to be little threat of repetition because Plaintiffs have not alleged that there are any unsold units in the Sarasota Cay Club or, for that matter, any other projects. Although Plaintiffs could conceivably show that the alleged mail and wire fraud were part of Defendants' regular way of doing business, they have not alleged, with particularity, any fraud in Sarasota Cay Club or the other developments.

Finally, it is argued that Plaintiffs cannot bring a RICO claim based on the same allegations as their securities fraud claim. The RICO statute provides, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). Because it has not been conclusively determined that Defendants engaged in conduct that "would have been actionable" as securities fraud, the application of § 1964(c) would be premature.

**Interstate Land Sales Full Disclosure Act**

Plaintiffs allege that Defendants violated ILSFDA in the marketing and sale of the Sarasota Cay Club units. As discussed, this claim must be dismissed for failure to comply with Rule 9(b). Schwarz argues that Plaintiffs' ILSFDA claim must be dismissed for the additional reason that Sarasota Cay Club is exempt. The statute provides:

> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to--
> . . .
>
> (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building . . . .

15 U.S.C. § 1702(a)(2).

The Eleventh Circuit has held that "a developer seeking an exemption under § 1702(a)(2) and (b)(1) must produce factual evidence demonstrating that the method of disposition has a real world

12

objective that manifests a legitimate business purpose." *Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1257 (11th Cir. 2011). This standard "asks the party invoking the exemption to articulate some legitimate business reason for its method of disposition other than the avoidance of the ILSFDA's consumer protections." *Id.* While Schwarz's arguments are noted, the standard articulated by the Eleventh Circuit is not appropriately tested on a motion to dismiss.

The Sunvest Defendants argue that they cannot be liable under ILSFDA because the statute only applies to a "developer or agent." § 1703(a). ILSFDA defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." § 1701(5). An "agent" is "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision . . . ." § 1701(6). Notwithstanding the Sunvest Defendants' arguments, Plaintiffs have alleged sufficient facts to state a plausible claim that Sunvest either advertised or acted on behalf of a party who advertised Sarasota Cay Club units for sale.

The Sunvest Defendants further argue that Plaintiffs' ILSFDA claim is untimely because they failed to demand revocation within two years. *See* 15 U.S.C. §§ 1703(c) and (d). Plaintiffs do not seek to revoke their contracts and do not bring claims under section 1703(c) or (d). Accordingly, the two year limitations period for demanding revocation does not apply.

**Constructive Trust**

As previously explained (No. 09-cv-2543, Dkt. 159), a constructive trust is an "equitable remedy–not a cause of action." *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008). Therefore, Plaintiffs' separate cause of action for a constructive trust must be dismissed.

13

**Leave to amend**

Although this was Plaintiffs' fourth pleading attempt,[9] Plaintiffs will be given one final opportunity to state a cause of action. But the second amended complaint in this action will be limited to specific claims against specific Defendants.

In the amended complaint, Plaintiffs identified conduct by S-Bay, Sunvest, Harris Friedman, Harvey Birdman, Herbert Hirsch, Louis Birdman, and David W. Schwarz which was arguably connected with the alleged fraudulent scheme, albeit not with the particularity required by Rule 9(b). On the other hand, notwithstanding four attempts, Plaintiffs have not alleged any specific conduct by Diane Birdman, Bonita Hirsch, Louis Birdman Revocable Trust, Harvey Birdman Revocable Trust, Diane S. Birdman Revocable Trust, or Bonita Hirsch Revocable Trust. While Plaintiffs vaguely allege that these Defendants "participated in the creation and/or ownership" of Sarasota Cay Club and were managers, owners, or affiliates of Sunvest, they have not set forth any facts that connect these Defendants to the alleged fraudulent scheme. (Dkt. 55, Am Compl. ¶¶ 35-37, 39-41, 50, 52). Although Plaintiffs seek to pierce Sunvest's corporate veil, they offer nothing more than the conclusory statement that Sunvest was undercapitalized and was not treated as a separate entity by its owners. (*Id.* ¶ 63). With respect to their substantive allegations, Plaintiffs have merely tracked the elements of a claim (*id.* ¶ 104) and alleged that these Defendants "formulated the conspiracy to commit fraud." (*Id.* ¶ 64). These are simply legal conclusions, which are not supported by any facts. Given their failure to plead facts connecting Diane S. Birdman, Bonita Hirsch, Louis Birdman Revocable Trust, Harvey Birdman Revocable Trust, Diane S. Birdman Revocable Trust, or Bonita Hirsch Revocable Trust to the alleged fraudulent scheme, Plaintiffs will not be permitted to file a second amended complaint against these Defendants.

---

[9] Case No. 8:09-cv-2543, Dkts. 1, 199; Case No. 8:11-cv-1091, Dkts. 1, 55.

Plaintiffs are therefore granted leave to file a second amended complaint against S-Bay, Sunvest, Harris Friedman, Harvey Birdman, Herbert Hirsch, Louis Birdman, and David W. Schwarz. Plaintiffs will not be permitted to include any of the theories that fail to state a cause of action for fraud, as discussed. Plaintiffs' fraud-based claims shall be limited to misrepresentations or omissions regarding (1) the false appraisal, (2) the manner in which the closing funds would be used, (3) the optional leaseback, (4) improvements that would be made to the property including construction of a second phase, and (5) upgrades to the individual units. Moreover, Plaintiffs may not include any new causes of action without further leave of Court, as they have had ample opportunity to assert all claims in their prior pleadings.

In framing their claims, Plaintiffs should be mindful of Rule 8's requirement to provide a "short and plain statement" of their claim. To date, Plaintiffs pleadings have been repetitive, disjointed, and unnecessarily lengthy. Despite the Court's admonishments, Plaintiffs have continued to file shotgun pleadings which incorporate all allegations into every count and attribute all conduct to multiple defendants. Plaintiffs second amended complaint shall be a short and plain statement which shows, specifically, what each Defendant is accused of doing.

### Conclusion

Accordingly, Defendants' motions to dismiss (Dkts. 67, 69) are GRANTED. The amended complaint (Dkt. 55) is dismissed without prejudice. Plaintiffs are granted leave to file a second amended complaint consistent with this order within 14 days.

**DONE AND ORDERED** this 8th day of March, 2012.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record